IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT COURT OF SOUTH CAROLINA

| | |
|---|---|
| Mary Adams Ross as Personal Representative of the Estate of Alexander Chance Decedent,<br><br>   Plaintiff,<br><br>vs.<br><br>County of Anderson; The Anderson County Sheriff's Office; John Skipper, former Sheriff of Anderson County, individually and in his official capacity; Deputy David Stipe, individually and in his official capacity, Deputy Matthew McCarty, individually and in his official capacity;<br><br>   Defendants. | C/A No.: 8:18-cv-02108-DCC-KFM<br><br>**PLAINTIFF'S ADDENDUM TO HER MOTION TO RECONSIDER ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANTS** |

Plaintiff, by and through the undersigned counsel, respectfully supplements her Motion to Reconsider (Doc. No. 115) with the addendum found herein. moves this Court to reconsider its Order, Granting Summary Judgment in favor of Defendants. In support of her motion, Plaintiff hereby alleges the following:

### 2.3.5. DNA Analysis Report on the Glock 22

Speaking of the issue of the unknown DNA on McCarty's service weapon (hereinafter referred to as GLOCK, Plaintiff finds issue with the chain of evidence in general. At the end of Earwood's statement he says,

> Numerous Dep arrived on scene and along with Sgt McBee. Sgt advised me that I needed to ride to the hospital with McCarty in my patrol vehicle. I followed the ambulance to the hospital. There Sgt. Brown gave me Dep. McCarty's gun belt, patrol vest, and backup gun holster to put in my patrol vehicle. I put all of those items in the trunk of my vehicle.

1

(Exhibit 10). Sgt. Brown does not appear by name or signature on any chain of custody paperwork. Why did Sargeant Brown give evidence to Earwood, an ACSO deputy? What other evidence did Brown have? What other evidence was in Earwood's trunk? Clearly, Earwood was told to go to the hospital for no other reason than to pick up evidence so it could be placed "in the trunk of my vehicle".

### 2.3.6. Conditions of the Weapons

Let us now turn our attention to McCarty's GLOCK, and the condition and position it was found at the scene by SLED. Nowhere in McCarty's rendition of facts does he ever mention the GLOCK being on the ground. However, a close examination of the GLOCK shows dirt, mud and grime in every orifice, nook and cranny of same, and on all sides top to bottom and front to back. Dirt and mud was pressed into the GLOCK from every conceivable angle (Exhibits 30, 31, 32, 33 and 34). Even the magazine had dirt on *both* sides (Exhibits 35 and 36). All of these items would have been in pristine, clean condition prior to the incident. The GLOCK was so thoroughly dirty that it was clearly not by happenstance. Without question, the GLOCK had been dirtied intentionally by rubbing it on the ground. There is no other explanation for how filthy the weapon was.

In comparison, McCarty's .38 Special backup revolver. which he admittedly threw to the ground, had a small amount of dirt on the butt; but, was otherwise shiny and clean (Exhibits 37, 38, 39 and 40). Adjacent to the shooting scene, investigators found a patch of ground (Exhibit 41) where the leaves had been pushed back and something had been drug through the dirt and mud. There are no footprints or vehicle tracks. There are lines where an object was dragged through the mud multiple times. Plaintiff contends this was done by someone attempting to thwart any fingerprint or DNA recovery from the GLOCK. The unknown DNA on the trigger

and trigger guard are the remnants of the "cleaner".  ACSO or SLED were unwilling to determine whose DNA that was when it could have easily been ascertained by performing the same buccal swabs on all of the ACSO personnel who were present, and not just the handful who did participate.

In addition, there was a flashlight attached to the front of the GLOCK. The mechanism to turn the light on and off is not a button but a sliding toggle switch (which was also full of dirt and mud). A sliding switch, which by scraping the GLOCK across the ground, would have caused that switch to engage and turn the light on (Exhibit 34).  It should be noted it was between 12:30 p.m. and 1:00 p.m. when this occurred, making the light from the flashlight unnecessary.

The GLOCK was found between the legs of Partain. McCarty put great emphasis on the fact Partain's finger was on the trigger of the weapon. McCarty apprised every single responder to make note of this fact *except* Deputy Smith, McCarty's partner that day and the first to arrive on the scene.  When Deputy Smith was at the shooting site, the GLOCK was not yet positioned where it was found.  McCarty did not offer to Smith the story about how the magazine somehow found its way back in the gun and Partain had his finger on the trigger.

> Deputy McCarty was laying on his side, bleeding from his head.  The white male was face down beside him.  Deputy McCarty stated to me that he was not shot, but he was hurt and needed EMS.

(Exhibit 21-Smith Narrative).

When Smith was asked about whether she saw weapons, she answered in the negative.

> Q. When you located Deputy McCarty, did you observe any weapons?
> A. No.  I could not see any weapons from my vantage point.

(Exhibit 22-Smith Voluntary Statement).

Smith saw the cut on the back of McCarty's head.  However, she did not see, nor hear about,

Decedent having a weapon, despite the fact she was able to view the laceration on the back of McCarty's head.

The Court has cited a lack of evidence for its ruling. However, endless unanswered questions about material facts, make summary judgment unfeasible. Why is ACSO unable/unwilling to answer so many important questions in a police shooting resulting in death? For instance: the lack of proof of why they chased Decedent to begin with; the lack of proof McCarty struggled with his back on the ground; the lack of proof Decedent ever posed a threat; the lack of proof regarding the dominant DNA on the trigger; the lack of proof/impossibility McCarty shot him as described; the lack of proof as to how the gun became so filthy; the lack of proof in the 59 times McCarty could not recall something in his deposition; the lack of proof provided by documents redacted by the Defendants which withheld potentially crucial evidence to the incident; etc. The police have a responsibility to society to explain their actions regardless of whether they are sued. Their duty of transparency far outweighs this or any other case. To have so many unanswered questions in the death of a citizen is unconscionable.

Submitted by:<br>
*s/Donald L. Smith*<br>
Donald L. Smith<br>
122 N. Main Street<br>
Anderson SC 29621<br>
Telephone: (864) 642-9284<br>
Facsimile: (864) 642-9285<br>
attorneydonaldsmith@gmail.com

Anderson, South Carolina
November 11, 2020.